```
                                                           RECEIVED
                                                    USDC CLERK, CHARLESTON, SC
        UNITED STATES DISTRICT COURT
         DISTRICT OF SOUTH CAROLINA                 2005 SEP 23  A 11: 31
```

| | |
|---|---|
| Albert Adams, Jr., # 2991, | ) C/A No. 2:05-2537-SB-RSC |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| Officer Johnny Hamilton;<br>Chief Hugh Ray;<br>City of New Ellenton; and<br>New Ellenton Police Dept., | ) |
| Defendants. | ) |

This is a civil rights action filed *pro se* by a person detained at a local detention center.[1] Plaintiff claims that he was threatened by Officer Johnny Hamilton, a member of the New Ellenton Police Department. He claims that New Ellenton Police Chief Ray was aware of the threat. He also claims that such "harassment" of Plaintiff and his wife by Officer Hamilton had been ongoing; however, he also claims that Officer Hamilton is currently engaging in "misconduct" because of his "relationship" with Plaintiff's "ex-wife." Furthermore, Plaintiff alleges that he suffered "job discrimination" at the hands of Chief Ray and two unnamed "Clerks" at "New Ellenton City Hall" because he was allegedly given false job qualifications for the job he was interested in. Although Plaintiff broadly claims to be the victim of "harassment" and "racial profiling" as well as "job discrimination," there

---

[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. See also 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

1

are no allegations anywhere in his Complaint stating that Plaintiff is a member of any distinct race, class, religion or sex, or that the alleged discrimination took place because of his race, color, religion, sex, or national origin. Furthermore, although he mentions "Clerks" at the New Ellenton City Hall, he does not allege that either the New Ellenton Police Department or the New Ellenton City Council has any type of policy requiring the types of discrimination alleged. Additionally, there are no allegations of any personal involvement in the alleged harassment or discrimination by any member of the City Council or of the Police Department (except for Officer Hamilton and Chief Ray).

## Pro Se Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995)(*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *see* Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9-10 & n.7 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro*

se complaint, the plaintiff's allegations are assumed to be true. See Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. See Weller v. Department of Social Servs., 901 F.2d 387(4th Cir. 1990). Even under this less stringent standard, however, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

### Police Misconduct

Initially, neither Officer Hamilton nor Chief Ray can be held liable for damages resulting from Officer Hamilton's alleged "harassment" of Plaintiff. It is well settled that "the use of vile and abusive language is never a basis for a civil rights action." Sluys v. Gribetz, 842 F. Supp. 764, 765 n. 1 (S.D.N.Y. 1994), aff'd, 41 F.3d 1503 (2d Cir. 1994); see Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1983). There are no allegations that Officer Hamilton ever physically touched Plaintiff during the encounter complained about, nor that he did anything more than threaten Plaintiff by telling him that if he (Plaintiff) had a knife, he (Officer Hamilton) had a gun. As a result, Plaintiff has not stated a viable federal claims for damages against Officer Hamilton under 42 U.S.C. § 1983.[2] Furthermore, since Officer Hamilton's actions do not give rise to a claim for damages, certainly Chief Ray's knowledge of Hamilton's statements does not make him liable to Plaintiff.

In order to assert a viable section 1983 claim against any particular public official,

---

[2]Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).

3

a "causal connection" or "affirmative link" must exist between the conduct of which the plaintiff complains and the official sued. See Kentucky v. Graham, 473 U.S. 159 (1985); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). A plaintiff, such as Plaintiff is this case, suing a government official in his individual capacity and thereby seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right complained of. See Graham, 473 U.S. at 166. Since there are no allegations that Chief Ray was personally involved in the alleged harassment, even if Officer Hamilton's behavior were actionable (which it is not), Chief Ray would not be responsible for it.

With respect to any party's liability for "misconduct" of Officer Hamilton relative to a relationship with Plaintiff's ex-wife, such misconduct would need to be addressed in the context of his employment and not by a federal action for damages. This Court cannot order a state or local government entity to terminate employment or otherwise discipline one of its employees. In Davis v. Lansing, 851 F.2d 72, 74 (2d Cir. 1988), it was held that "[t]he federal courts have no general power to compel action by state officials[.]" 851 F.2d at 74; see Craigo v. Hey, 624 F. Supp. 414 (S.D. W.Va. 1985); see also Maxton v. Johnson, 488 F. Supp. 1030, 1032 n. 2 (D.S.C. 1980)(a federal district court lacks inherent power to hire or remove officials not within the executive control of that federal district court)(citing United States v. White County Bridge Commission, 275 F.2d 529, 535 (7th Cir. 1960)). Moreover, in absence of allegations that the City of New Ellenton and/or the New Ellenton Police Department has a custom or policy of actionable racial profiling and/or harassment, they cannot be held liable for any otherwise actionable behavior on the part

of an individual police officer. Municipalities and other local governmental units, including counties in South Carolina, cannot be sued on a *respondeat superior* theory for the unconstitutional acts of their employees. *See* Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978).

## Employment Discrimination

Finally, to the extent that Plaintiff claims that he was the victim of "job discrimination," his allegations fail to state a viable claim against any party for relief. Title VII of the Civil Rights Act of 1964 creates a federal cause of action for employment discrimination based on a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2; *see* Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 136-37 (4th Cir. 1995). A Title VII plaintiff must first exhaust administrative remedies before filing a claim in federal court. *See* Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999). A federal court can assume jurisdiction over a Title VII claim only after Plaintiff has complied with the various administrative procedures set forth in 42 U.S.C. § 20003-5(b). *See* Davis, 48 F.3d at 136-137. These procedures "include an investigation of the Complaint and a determination by the [Equal Employment Opportunity Commission (EEOC)] as to whether 'reasonable cause' exists to believe that the charge of discrimination is true." *Id.* at 137. Plaintiff's claim with the EEOC "defines the scope of [her] subsequent right to institute a civil suit." Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir. 2000). Only claims "reasonably related" to those in the EEOC charge may be advanced in a subsequent civil suit.

When the state in which the alleged discrimination occurred has enacted a law

"prohibiting the unlawful employment practice alleged" and "has establish[ed] or authoriz[ed] a State or local authority to grant or seek relief from such practice," proceedings must first be commenced under the state law before a charge may be filed with the EEOC. See Davis, 48 F.3d 137 (quoting § 2000e-5(c)). South Carolina has anti-discrimination laws similar to those of Title VII and a "deferral agency", the South Carolina Human Affairs Commission (SCHAC), with essentially the same powers as the EEOC. Accordingly, a claimant must first file his claim with such agency before he can file an employment discrimination suit in federal court. See id. (under § 2000e-5(c), "commencement of proceedings under state law is a prerequisite to EEOC action where a state remedial scheme exists."). The purpose of this deferral procedure is to give the state agency a chance to resolve the claim and thereby possibly alleviate the need for the involvement of the federal agency or courts.[3] See id. at 136. Thus, Title VII provides that "a federal discrimination claim brought by a private party cannot be heard by a federal district court until the EEOC has conducted an investigation and determined the validity of the claim." Davis, 48 F.3d. at 138 (citing § 2000e-5(b)). The EEOC must then decide whether it will bring a claim in federal court or if it will issue a "right-to-sue" letter to the claimant, "which letter is *essential* to initiation of a private Title VII suit in federal court." Id.

Plaintiff has not alleged in his Complaint that he ever filed a discrimination claim against any of the Defendants with the EEOC and/or with the SCHAC, much less that he received either a right-to- sue letter or is entitled to a right-to-sue letter. The Fourth Circuit

---

[3] The timely filing of a verified Complaint with the EEOC is another precondition to filing suit. In South Carolina and other deferral states, the Complaint must be filed with the EEOC by the earlier of 300 days from the last discriminatory act or 30 days from the termination of the state agency's proceeding.

has "long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's Complaint." Id. at 140. Where the Complaint does not allege that Plaintiff has complied with Title VII's prerequisites, "Plaintiff has not 'properly invoked the court's jurisdiction under Title VII'." Id. (quoting United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979)). As a result, even if Plaintiff had alleged that Chief Ray or the "Clerks" for the City of New Ellenton discriminated against him by not hiring him as a result of his "race, color, religion, sex, or national origin," which he has not, this Court would still be precluded from hearing such claims. In absence of exhaustion of the required administrative remedies, the Court cannot exercise jurisdiction over a Title VII employment discrimination claim. Furthermore, to the extent that Plaintiff's employment discrimination claim could be considered as one brought under either 42 U.S.C. § 1981 or 42 U.S.C. § 1985, it is also subject to summary dismissal as to all Defendants because Plaintiff does not allege that he was discriminated against due to his race. See Simmons v. Poe, 47 F.3d 1370 (4th Cir. 1995); (racial discrimination required under § 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63 (6th Cir. 1985) (§ 1981; same).

### Recommendation

Accordingly, it is recommended that the District Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process.    See Denton v. Hernandez; Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe, 998 F.2d 201, 202-04 & n. * (4th Cir. 1993); Boyce v. Alizaduh; Todd v. Baskerville, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district

7

courts should review prisoner cases to determine whether they are subject to summary dismissal). Plaintiff's attention is directed to the important notice on the next page.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

September 23, 2005
Charleston, South Carolina

8

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The *Serious Consequences* of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-71 (1976); Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *See* Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard,, the court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"; which involved a *pro se* litigant); Goney v. Clark, 749 F.2d 5, 7 n. 1 (3d Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

9